**In re Tamla T. SCOTT, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 496724).**

**No. 08–BG–191.**

District of Columbia Court of Appeals.

Argued March 28, 2011.

Decided May 12, 2011.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and FARRELL, Senior Judge.

THOMPSON, Associate Judge:

In this case, we consider the Report and Recommendation of the Board on Professional Responsibility ("Board") with respect to two matters that the Board consolidated. Both matters concern respondent Tamla T. Scott, a member of the Bar of the District of Columbia. The first is a reciprocal matter based on disciplinary action by the North Carolina Bar, and the second is an original matter arising out of respondent's conduct in connection with her application for admission to the District of Columbia Bar ("D.C. Bar"). The Board concluded that respondent violated multiple Rules of Professional Responsibility, and recommends as a sanction that she be suspended for two years, with a requirement to prove fitness as a condition of reinstatement. While respondent has not taken exception to the Board's recommendation, Bar Counsel objects, arguing that respondent should instead be disbarred. For the reasons that follow, we conclude that a three-year suspension with a fitness requirement is the appropriate sanction.

I.

Neither respondent (who has not participated in the proceedings before the court) nor Bar Counsel challenges the Board's findings of fact, which we summarize as follows. Before applying for admission to the D.C. Bar, respondent had been a practicing attorney in North Carolina for ten years. In the summer of 2005, she moved to the District of Columbia and provided a Maryland forwarding address to the North Carolina State Bar. On August 30, 2005, she signed her application for admission to

Elizabeth A. Herman, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

No brief was filed and no appearance was entered on behalf of respondent.

the D.C. Bar, applying as a "member in good standing" of another Bar and stating in a sworn declaration, "I have read the foregoing document and have answered all the questions fully and frankly."

Question 10A on the D.C. Bar application asked whether respondent had "ever been disbarred, suspended, censured, or otherwise reprimanded or disqualified as an attorney," to which she answered "[y]es," and Question 10B asked whether she had "ever been the subject of any charges, complaints, or grievances (formal or informal) concerning [her] conduct as an attorney, including any now pending," to which she answered, "No." Respondent explained on the application that she had been reprimanded by the North Carolina State Bar in 2003 "for failing to timely respond to a Grievance," further noting that the grievance was "ultimately dismissed."[1] The Board agreed with the Hearing Committee that respondent's negative answer to Question 10B was "literally wrong," but found it not misleading "in light of her disclosure of the February 2003 reprimand in response to Question 10A."

By letter dated September 22, 2005, this court's Committee on Admissions ("COA") sent respondent a letter acknowledging receipt of her application for admission to the D.C. Bar. In the letter, the COA notified respondent of her obligation to "inform the Committee by letter of any change in address, employment, or any other circumstance (e.g., bar admissions, disciplinary matters, civil and criminal litigation, credit problems, etc.)." Respon-

dent received the letter, and later acknowledged that it placed her on notice of her duty to update the COA while her application for admission was pending. On February 21, 2006, the COA sent respondent a Supplemental Questionnaire, which asked whether there were "any charges or complaints now pending concerning your conduct as an attorney, as a member of any other profession or as a holder of any public office," to which respondent replied, "No." On March 6, 2006, respondent submitted her signed and sworn response to the questionnaire to the COA and was sworn in as a member of the D.C. Bar.

In the meantime, before respondent was sworn in to the D.C. Bar, she had become the subject of four disciplinary grievances in North Carolina. Each grievance involved the same general pattern: a client retained respondent to represent him or her in a family law matter, paid respondent from $675 to $1,675 in legal fees, and then failed to hear from respondent again.[2] In the first case, in May 2005, respondent's client Jennifer Goodman filed a Petition for Resolution of Disputed Fees with the North Carolina State Bar, a petition that ripened into a disciplinary grievance on October 5, 2005, after respondent had failed to respond. However, respondent neither notified the COA of the pending *Goodman* grievance in compliance with her ongoing obligation to "inform the Committee by letter of any ... disciplinary matters," nor disclosed the grievance in her response to Question 5 of the Supplemental Questionnaire.

---

1. The 2003 North Carolina Bar reprimand was based on respondent's failure to respond to two fee dispute petitions and two related disciplinary grievances, in violation of North Carolina Rules 1.5(f) (failure to respond to fee dispute petition matters) and 8.1(b) (failure to respond promptly to grievances).

2. There were slight variations in this pattern. For example, in the *White* matter, discussed *infra*, respondent did file a motion on behalf of her client, but did not complete the legal work and then failed to appear for a scheduled hearing.

In September 2005, three of respondent's other clients, Trina White, Andrea Smith, and Jeffrey Porter, filed fee dispute petitions against her. When respondent failed to respond, their petitions became disciplinary grievances as well. Respondent was aware of the outstanding fee dispute petitions in *White, Smith,* and *Porter* during the time her application for admission to the D.C. Bar was pending before the COA. She also knew that failure to respond to the petitions would result in the filing of disciplinary grievances,[3] and, indeed, the North Carolina State Bar opened three additional grievance cases based on respondent's failure to respond to the *Smith, White* and *Porter* fee dispute petitions. Between December 2005 and February 2006, the North Carolina Bar attempted to serve respondent with these grievances by certified mail, but the letters were continually returned as "unclaimed."[4] On April 3, 2006, approximately a month after she was admitted to the D.C. Bar, respondent was served in person with the North Carolina State Bar's February 1, 2006 letter about the *White, Smith,* and *Porter* grievances.

On March 10, 2008, the Disciplinary Hearing Commission of the North Carolina State Bar found that respondent had violated North Carolina Rules of Professional Conduct 1.3 (diligence); 1.4(a)(3) (failure to keep client reasonably informed); 1.4(a)(4) (failure to communicate); 1.16(d) (failure to return unearned fees); 1.5(f) (failure to respond to notice of fee dispute petitions); 8.1(b) (failure to respond to lawful inquiry from disciplinary authority); and N.C. Gen.Stat. § 84–28(b)(3) (failure to respond to a disciplinary inquiry).[5] On February 20, 2008, the North Carolina State Bar suspended respondent for three years, with a provision that she could apply for a stay of the remainder of the suspension after one year, provided she fulfilled certain conditions.[6]

On March 24, 2008, after the North Carolina discipline came to this court's attention, we suspended respondent pursuant to D.C. Bar R. XI, § 11(d) (2001), and re-

---

3. Respondent testified as follows. "Q: And, you also knew that if fee disputes aren't resolved, or the attorney doesn't cooperate, they turn into grievances; isn't that correct? You know that? A: Yes."

4. In December 2005, the North Carolina State Bar attempted to serve respondent with the *White* and *Smith* grievances by certified mail at the Maryland address she had provided. While her application for admission to the D.C. Bar was pending, respondent had notice of an attempt to deliver at least one of those letters. On January 11, 2006, a North Carolina State Bar investigator contacted respondent by telephone and informed her about the returned letters, and respondent provided a new Washington, D.C. address as her mailing address. It is unclear whether the investigator informed respondent about the content of the letters, but regardless, on February 1, 2006, the North Carolina State Bar mailed respondent copies of the *White, Smith,* and *Porter* grievances and requested

written responses by February 28, 2006. The transmittal letter also requested an additional response to the *Goodman* grievance and a response to a claim by the North Carolina Clients' Security Fund. The letter was returned as "unclaimed."

5. North Carolina Rules 1.3, 1.4(a)(3), 1.16(d), and 8.1(b) are functionally identical to the corresponding District of Columbia Rules of Professional Conduct. N.C. Gen.Stat. § 84–28(b)(3) is functionally identical to Rule 8.1(b) of the District of Columbia rules. North Carolina Rule 1.5(f) does not have a direct counterpart in the District of Columbia rules.

6. Bar Counsel's brief states that, as of June 1, 2010, respondent had not sought reinstatement with the North Carolina State Bar. As well, as of the date of oral argument in these matters, counsel were not aware of respondent having sought reinstatement in North Carolina.

ferred the matter to the Board for its reciprocal discipline recommendation.[7] On April 23, 2009, Bar Counsel filed a statement with the Board recommending the "functionally equivalent" reciprocal discipline of a one-year suspension with a fitness requirement.

The original-discipline matter commenced on April 22, 2008, when Bar Counsel charged respondent with violating several District of Columbia Rules of Professional Conduct. After a hearing, the Hearing Committee issued a report on November 21, 2008, finding respondent in violation of Rules 8.1(a), 8.1(b), and 8.4(c). The Hearing Committee found that respondent gave "deliberately false" testimony about why she did not disclose the *Goodman* grievance (either through a letter updating the COA or in her answer to the Supplemental Questionnaire),[8] and that respondent had "dishonestly concealed information which she knew would delay or possibly even cause the COA to deny her application." The Hearing Committee also found that when respondent stated in an August 6, 2007 letter to Bar Counsel, "[w]hen I answered the Supplemental Questionnaire on March 4, 2006, there were not, to my knowledge, any charges or complaints pending against me concerning my conduct as an attorney," respondent knew that the statement was inaccurate. The Committee further found that respondent knew that her statement in the August 6, 2007 letter, that it was *"after"* she received her D.C. license that she was "informed that her failure to adequately respond to the fee disputes led the N.C. State Bar to institute grievances against [her] for failing to adequately respond," was "patently false." [9] As a sanction for respondent's intentional dishonesty, the Committee recommended a nine-month suspension with a fitness requirement, to which Bar Counsel filed an exception. On February 24, 2009, after oral argument before the Board in the original-discipline matter, the Board ordered consolidation of the two matters.

On March 17, 2010, the Board found in the original-discipline matter that respondent violated Rule 8.1(a) (knowingly making a false statement of material fact in connection with a bar admission application); Rule 8.1(b) (failing to disclose a fact necessary to correct a misapprehension known to have arisen in connection with a bar admission application); Rule 8.4(c) (dishonest conduct, two instances); and Rule 8.4(d) (conduct that seriously interferes with the administration of justice).[10]

---

7. Respondent filed a statement requesting a lesser sanction but not contesting the imposition of reciprocal discipline.

8. Despite admitting to the Hearing Committee that she had received notice that the *Goodman* fee dispute petition had become a grievance, and despite submitting a response to the *Goodman* grievance in which she referred to it as a "grievance" three times, respondent told the Hearing Committee that she was "still looking at it as a fee dispute, for some reason."

9. The Committee found that respondent's false written response to Bar Counsel's investigation "demonstrates her willingness to distort facts to suit her needs[.]"

10. The Board noted that respondent "understood that a disciplinary grievance had been opened against her, and ... her self-serving testimony that she still regarded it as a 'fee dispute' was a deliberate misrepresentation." The Board further found that respondent not only was aware of the *Goodman* grievance, but knew or should have known about the pending grievances in the *White, Smith,* and *Porter* matters prior to executing the Supplemental Questionnaire and being sworn in to the D.C. Bar. The Board observed that respondent's statements "were knowingly false with respect to the *Goodman* matter and, at a minimum, made in reckless disregard of the truth with respect to the *White, Smith* and *Porter* matters."

In the reciprocal matter, the Board determined that reciprocal discipline should be imposed on respondent pursuant to D.C. Bar R. XI, § 11(c) (2001). The Board recommended that respondent be suspended for two years with a fitness requirement "as a consolidated sanction for the misconduct in both the original and reciprocal discipline matters." Further, the Board recommended that respondent receive credit for time spent on interim suspension in the reciprocal matter, allowing the recommended two-year suspension period to run from the date of the effective date of the interim suspension. Bar Counsel noted an exception to the Board's recommended sanction, urging that we disbar respondent; respondent has not taken exception to the Board's recommendation.

## II.

 In reviewing the Board's recommendations in both original-discipline and reciprocal matters, we "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record," D.C. Bar R. XI, § 9(h)(1), but we conduct a de novo review of the Board's legal conclusions. *In re Williams*, 3 A.3d 1179, 1183 (D.C.2010); *In re Fair*, 780 A.2d 1106, 1110–11 (D.C.2001). D.C. Bar R. XI, § 11(c) establishes a presumption that, in a reciprocal matter, this court will impose a sanction "identical to that imposed by the original disciplining court," *In re Fitzgerald*, 982 A.2d 743, 745 (D.C. 2009), unless the respondent is able to demonstrate that "substantially different discipline" would be imposed in the District of Columbia. With respect to the recommended sanction in an original-discipline matter, we defer to the Board's recommendation "unless to do so would foster a tendency toward inconsistent disposi-

tions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1); *accord, In re Cleaver–Bascombe*, 986 A.2d 1191 (D.C.2010) (*"Cleaver–Bascombe II "*); *In re Elgin*, 918 A.2d 362, 373 (D.C.2007); *In re Berryman*, 764 A.2d 760, 766 (D.C.2000). "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Hallmark*, 831 A.2d 366, 371 (D.C.2003). However, "[w]hen the court disagrees with the Board as to the seriousness of the offense or the demands of consistency, ... the Board's recommendations are accordingly granted less weight." *Cleaver–Bascombe II*, 986 A.2d at 1195 (quoting *In re Goffe*, 641 A.2d 458, 464 (D.C.1994)) (further citations and internal quotation marks omitted). This is because ultimately, "the system of attorney discipline ... is the responsibility and duty of this court." *Goffe*, 641 A.2d at 464. As such, "we are always mindful that the solemn obligation and responsibility for determining and imposing disciplinary sanctions on a member of our bar rest upon this court." *Cleaver–Bascombe II*, 986 A.2d at 1195.

## III.

 In taking exception to the Board's recommendation of a two-year suspension with fitness, Bar Counsel emphasizes that, despite the Board's reference to its recommended discipline as a "consolidated sanction," the Board's stated "focus [was] on the misconduct in the original matter." As a result, Bar Counsel argues, the Board's recommended sanction fails to reflect the seriousness of the reciprocal and original matters in combination.[11] Bar Counsel urges that disbarment is warranted as a

11. At oral argument, the Deputy Bar Counsel stated, less formally, that under the Board's recommendation, respondent "seems to get a pass on the reciprocal [matter] misconduct."

sanction that takes into account both matters. Bar Counsel further contends that because the Board's sanction recommendation appears to be based solely on the misconduct in the original matter, the discipline imposed should not run from the date when respondent began to serve her period of interim suspension in the *reciprocal* matter.

Having reviewed the Board's analysis supporting its sanction recommendation, we are constrained to agree with Bar Counsel that even though the Board characterized its recommended sanction as addressing both the original-discipline and reciprocal matters, the sanction appears to reflect the former but not the latter.

In the first section of its analysis, the Board found respondent's conduct to be more serious than the Hearing Committee had when it recommended a nine-month suspension. While the Hearing Committee found no violation of Rule 8.4(c) in respondent's failure to notify the COA of the pending North Carolina grievances prior to submission of the Supplemental Questionnaire, the Board agreed with Bar Counsel that this failure to update the COA did constitute conduct involving dishonesty in violation of Rule 8.4(c). Thus, the Board found that Bar Counsel had proven the charged violation of Rule 8.4(c) through repeated instances of dishonest conduct. In addition, while the Hearing Committee did not address the charged violation of Rule 8.4(d), the Board noted that respondent's failure to make material disclosures to the COA after filing her initial application, as well as her false response to the COA's Supplemental Questionnaire, interfered with the administration of justice by "preventing a complete review of her character and fitness" to practice law in the District.[12]

In the second section of its analysis (entitled "Sanction"), the Board discussed the factors to consider in imposing discipline. Although acknowledging that respondent's "Bar admissions misconduct did not prejudice clients,"[13] the Board described respondent's misconduct as "serious." The Board noted that respondent's dishonesty had "deprived the COA of information necessary to conduct a proper character and fitness inquiry," that respondent had received a reprimand in North Carolina in 2003, that she had shown no remorse for her actions and had "failed to acknowledge that her conduct was wrongful at any stage of these proceedings," and that she had attempted to cover up her misconduct through false statements to Bar Counsel and untruthful testimony to the Hearing Committee. In addition, the Board agreed with the Hearing Committee that respondent's uncorroborated testimony about her own and her parents' illness and about "much more pressing issues" in her life neither explained nor excused her misrepresentations to the COA. Thus, the aggravating factors described above were not offset by mitigating factors.

Finally, the Board discussed several of this court's precedents, explaining where in the "wide range of discipline [this court has imposed] for intentional misrepresentations in bar applications" an appropriate sanction would fall. Citing the findings

---

12. *Cf. In re Starnes*, 829 A.2d 488, 500 (D.C. 2003) (explaining that the COA's character evaluation process allows this court to ensure that only attorneys with the highest character and integrity will be admitted to the bar, and that an applicant's violation of her duty to disclose material information to the COA "taint[s] the admissions process by depriving the [COA] of the opportunity to conduct a proper character and fitness inquiry").

13. By contrast, in the reciprocal matter, the North Carolina Bar found that respondent "caused potential significant harm to her clients and caused actual delay in certain clients' cases."

that respondent "engaged in an attempt to cover-up" her failure to disclose and that she acted intentionally rather than recklessly, the Board found that respondent's misconduct was more serious than misconduct in cases in which this court has imposed a six- or nine-month suspension.[14] The Board found that respondent's misconduct was less serious, however, than in cases where an applicant failed to disclose a felony conviction, see In re Small, 760 A.2d 612, 614 (D.C.2000) (three-year suspension with fitness), or engaged in a "pervasive pattern of deception" to multiple bar admissions authorities. See, e.g., In re Regent, 741 A.2d 40 (D.C.1999) (disbarment). The Board also found respondent's misconduct less serious than the "fraud perpetrated on the court" in Cleaver-Bascombe II (involving submission of false payment vouchers to the court). The Board relied on In re Powell, 898 A.2d 365 (D.C.2006) (involving material misrepresentations in a Bar application), as "providing the best guidance," but concluded that a sanction greater than the one-year suspension with fitness imposed in that case was warranted in respondent's case because of the aggravating factors described above.

The Board concluded by recommending a two-year suspension as a "consolidated sanction" for the misconduct in both the original and reciprocal discipline matters." However, as can be seen from the summary above, the Board's analysis led it to conclude that, by itself, respondent's Bar admissions misconduct charged in the original matter warrants a multi-year suspension with a fitness requirement. Notably, in the "Sanction" section of its analysis, the Board made no mention of the presumptive one-year suspension that was the

functional equivalent of the 2008 North Carolina discipline. Nor did the Board explicitly consider how the conduct underlying the North Carolina sanction—neglect of client matters and failure to respond to notices of fee dispute petitions and disciplinary authority inquiries—should affect the sanction to be imposed in the consolidated matters.

■ This court has not prescribed—and we do not read Bar Counsel's brief to suggest—that the sanction imposed in consolidated cases must be arrived at rigidly or mechanically by establishing a separate sanction in each matter and then adding them together to arrive at the discipline. We are satisfied that the Board acted well within its discretion in targeting what might be called a holistic approach, i.e., setting out to recommend a single "sanction [that] ... addresses both the original and reciprocal discipline matters." We have cautioned, however, that when considered in combination, instances of misconduct charged in separate matters may "justify a lengthy period of suspension," even though when "[c]onsidered individually, and in isolation, these instances of misconduct might be deemed less serious" than the lengthy suspension indicates. In re Ditton, 980 A.2d 1170, 1173 (D.C.2009); see also In re Thompson, 492 A.2d 866, 867, 867 (D.C.1985) ("Thompson II") (explaining that it would be "erroneous" to read our case law as establishing that a suspensory sanction deemed appropriate in one matter should run concurrently with the suspension imposed in a second, consolidated matter).[15] The guiding principle remains that, in deciding upon an appropriate sanction, "the Board and this court should evaluate all circumstances of con-

---

14. See In re Starnes, 829 A.2d 488 (D.C.2003) (six-month suspension with fitness requirement); In re Rosen, 570 A.2d 728 (D.C.1989) (nine-month suspension with fitness).

15. At oral argument, the Board's Executive Attorney assured us, and we accept, that the Board did not intend the sanction it recommended to represent a concurrent sanction

duct that shed light on an attorney's fitness to practice." *In re Thompson,* 478 A.2d 1061, 1064 (D.C.1984). Notwithstanding its otherwise very careful and thoughtful analysis, the Board did not quite do this when it omitted from its analysis consideration of how the reciprocal matter should factor into its sanction recommendation.

■ The appropriate question is "[i]f all of the matters [underlying separate attorney discipline cases] were before the Board simultaneously, what would we recommend as the appropriate discipline?" *Thompson II,* 492 A.2d at 867. As we have frequently observed, "it is difficult[,] even in the best of circumstances, to try to match the facts of one case with previously decided cases in order to align the sanctions we impose for similar conduct," *In re Steele,* 868 A.2d 146, 154 (D.C.2005) (citation and internal quotation marks omitted). That observation applies perhaps *a fortiori* in this case, in which we must determine the appropriate sanction in a consolidated original-reciprocal case. But we are confident that the appropriate sanction here is one that reflects both (1) the two years that the Board determined reflects the discipline we have imposed in original matters for misconduct involving dishonesty with aggravating factors, and (2) an enhancement to take into account the misconduct that respondent's 2008 North Carolina discipline addressed. We therefore conclude that a three-year suspension with a fitness requirement is the appropriate sanction. *Cf. Steele,* 868 A.2d at 151, 153–55 (suspending attorney for three years with a fitness requirement for multiple instances of dishonesty, including proffering to a court a fabricated subpoena, and intentional neglect of multiple client matters); *see also In re Kline,* 11 A.3d 261, 265, 267 (D.C.2011) (concluding that a three-year suspension was the "lodestar" for the attorney's serious misconduct, which included dishonesty and "concrete and blatant deceit" undertaken to cover up the attorney's neglect of his client's case).

■ The remaining issue is the effective date of the suspension. Respondent filed an original affidavit pursuant to D.C. Bar R. XI, § 14(g) with the court on March 17, 2008, after her interim suspension in the reciprocal action, but failed to file an original of the affidavit with the Board. The Board recommended that respondent's suspension be deemed to run from March 17, 2008, if she filed an original affidavit with the Board within ten days of entry of the Board's report. On March 31, 2010, respondent filed a § 14(g) affidavit with the Board, but Bar Counsel reports to us that the affidavit does not appear to be an original. Because Bar Counsel does not contest the sufficiency of either the affidavit filed in March 2008 or the affidavit filed in March 2010,[16] we conclude despite the technical violation that *nunc pro tunc* treatment can be afforded. It is therefore

ORDERED that Tamla T. Scott is suspended *nunc pro tunc* from the practice of law in the District of Columbia for the period of three years, beginning March 17, 2008. Reinstatement in the District of Columbia is conditioned on demonstration of fitness to practice law in accordance with D.C. Bar R. XI, § 3(a)(2).

*So ordered.*

---

for the reciprocal and original-discipline matters.

16. Bar Counsel notes that "neither D.C. Bar R. XI, § 14(g), nor Board Rule 8.3 or Board Rule 9.9 states that the affidavit filed with the Board must be an original."