*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-BG-0090

IN RE CRAIG A. BUTLER, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 451320)

On Report and Recommendation
of the Board on Professional Responsibility

(BDN: 22-BD-003; DDN: 2018-D024, etc.)

(Argued January 7, 2025                    Decided August 7, 2025)

(Amended August 25, 2025*)[*]

*Johnny M. Howard* for respondent.

*Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, *Julia L. Porter*, Deputy Disciplinary Counsel, and *Sean O'Brien*, Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

---

[*] This amended opinion grants Petitioner Disciplinary Counsel's Motion to Amend the Court's opinion issued on August 7, 2025. The change noted is regarding the date that respondent's suspension will begin to run for reinstatement purposes. No further changes were made to the original opinion.

PER CURIAM: The Board on Professional Responsibility has concluded that respondent Craig M. Butler committed numerous violations of the rules of professional conduct and recommends that Mr. Butler be suspended from the practice of law for six months with reinstatement conditioned upon a showing of fitness. We agree with the Board's conclusions and adopt the Board's recommended sanction.

## I. Factual and Procedural Background

### A. Charges

The Office of Disciplinary Counsel (ODC) charged Mr. Butler in three counts. Count I involved a bankruptcy matter in which his client, Mr. Robinson, hired Mr. Butler to assist with saving Mr. Robinson's house from foreclosure. ODC charged that Mr. Butler violated D.C. R. Pro. Conduct 1.1(a) (competence), 1.1(b) (skill and care), 1.3(a) (diligence and zeal), 1.3(c) (reasonable promptness), and 1.4(a) (communication), by knowingly ignoring his client's bankruptcy deficiency; failing to respond to the opposing party's motion to terminate his client's bankruptcy stay; failing to tell his client about the motion despite several calls, texts, and emails from his client; and purposely withholding information from his client.

Count II involved six additional bankruptcy cases for five clients. In pertinent part, ODC charged that Mr. Butler violated D.C. R. Pro. Conduct 1.1(a), 1.1(b), 1.3(c), and 8.4(d) (serious interference with the administration of justice) by, among other things, failing to address multiple dispositive motions, including motions for summary judgment and for dismissal; failing to file motions to extend bankruptcy stays; failing to respond to multiple court orders and notices; and failing to appear at multiple court-ordered hearings.

Count III involved a personal-injury case Mr. Butler filed in Maryland on behalf of his client, Mr. Clayton. ODC charged that Mr. Butler violated Maryland Rules 19-301.1 (competence), 19-301.3 (diligence), and 19-308.4(d) (conduct prejudicial to the administration of justice). *See* D.C. R. Pro. Conduct 8.5(b)(1) (for conduct in connection with matter pending before tribunal, rules of jurisdiction in which tribunal sits are applied, unless rules of tribunal provide otherwise). Specifically, ODC alleged that, over the course of almost a year, Mr. Butler "never obtained a proper summons from the clerk; failed to comply with the court's rules and procedures; failed to keep his court contact information updated; failed to appear for at least three show[-]cause hearings; and failed to respond to many court orders and warnings, causing the court to dismiss the case."

## B. The Hearing Committee's Report and Recommendation

After an evidentiary hearing, the Hearing Committee made detailed factual findings, under a clear-and-convincing evidence standard, that included the following.

### 1. Count I

Mr. Robinson hired Mr. Butler to help Mr. Robinson save his home from foreclosure by filing for bankruptcy. Mr. Butler thereafter filed a bankruptcy petition on behalf of Mr. Robinson, which triggered an automatic stay that prevented the mortgage-holding bank from foreclosing on Mr. Robinson's home. During the period of the stay, Mr. Robinson was required to make monthly payments to the bank. Due to a misunderstanding, Mr. Robinson initially failed to make such payments. Mr. Butler assured Mr. Robinson that the late payments would likely not be a problem but then submitted an amended bankruptcy plan that did not address the overdue payments. Mr. Robinson started making payments to the bank going forward, but Mr. Butler did not follow up about the overdue payments and had minimal communication with Mr. Robinson.

The bank subsequently moved to lift the stay, arguing among other things that Mr. Robinson had missed payments for five months. In fact, Mr. Robinson had made

payments in four of those five months. Also, although the bank argued that the house's value was less than $300,000, Mr. Butler was aware of information suggesting that the house's value was over $400,000.

Although Mr. Butler received the bank's motion and a number of other related filing notices, Mr. Butler did not timely inform Mr. Robinson about the motion or file an opposition by the filing deadline. The court granted the bank's motion, and Mr. Robinson's home was sold at a foreclosure auction. Throughout this process, Mr. Butler repeatedly ignored Mr. Robinson's calls and did not keep him informed of the matter, even though Mr. Butler had specifically agreed to do so given that Mr. Robinson was unfamiliar with bankruptcy law.

Mr. Butler had arguments he could have raised in response to the motion to lift the stay, and Mr. Butler's failure to file an opposition to that motion deprived Mr. Robinson of the opportunity to negotiate with the bank or seek an order from the court preventing the lifting of the bankruptcy stay.

The Hearing Committee concluded that Mr. Butler's handling of Mr. Robinson's matter lacked competence and skill, in violation of D.C. R. Pro. Conduct 1.1(a) and (b); lacked diligence and zeal, in violation of D.C. R. Pro. Conduct 1.3(a); lacked reasonable promptness, in violation of D.C. R. Pro.

Conduct 1.3(c); and reflected inadequate communication with his client, in violation of D.C. R. Pro. Conduct 1.4(a).

## 2. Count II

The Hearing Committee described Mr. Butler's behavior in the six cases underlying Count II as follows. At various times, Mr. Butler failed to respond, or timely respond, to electronically received motions for summary judgment and motions to dismiss; failed to comply with filing requirements and local rules; and failed to comply with court notices and orders. In addition, Mr. Butler repeatedly delayed filing motions and repeatedly failed to appear at court-ordered hearings.

To illustrate in somewhat greater detail with respect to the foreclosure case of Mr. Butler's client, Mr. Jones, Mr. Butler failed to oppose the foreclosing party's motion for summary judgment, leaving the court to grant the motion for summary judgment by default. Mr. Jones only learned of this by checking the case docket himself; Mr. Butler had never informed Mr. Jones of the motion for summary judgment or Mr. Butler's failure to respond. Mr. Jones filed pro se motions to vacate default and an opposition to the motion for summary judgment and appeared pro se at a post-judgment hearing to defend his case. Mr. Butler then appeared in court at a subsequent hearing and claimed that an imposter, not Mr. Jones, had been the one

to file and appear; the court expressed skepticism about Mr. Butler's assertion. Although the court vacated the summary-judgment order following Mr. Jones's pro se filings and appearance, Mr. Butler did not supplement Mr. Jones's pro se opposition, even though the court had warned Mr. Butler that the opposition did not present any cognizable defenses. As a result, the court granted summary judgment a second time.

The Hearing Committee determined that the evidence before it showed that in Mr. Jones's case, Mr. Butler (1) failed to oppose the creditor's motion for summary judgment, (2) failed to appear for a hearing in Mr. Jones's case, (3) failed to make any attempt to avoid the entry of summary judgment against his client, and (4) was wholly unprepared when appearing at a subsequent hearing. As a result, the Hearing Committee concluded in pertinent part that Mr. Butler did not represent Mr. Jones with competence, zeal, or diligence.

More generally, in the remaining five cases involved in Count II, the Hearing Committee concluded in pertinent part that Mr. Butler in various respects failed to serve his clients with competence, skill, zeal, and diligence when he (1) failed to oppose motions to dismiss a client's bankruptcy case and the stay protecting the client's property, (2) filed a delayed motion to extend a bankruptcy stay, (3) failed to appear at court-ordered hearings, (4) filed a defective motion to extend a client's

bankruptcy stay and failed to cure the defect before the stay's expiration, (5) filed a defective bankruptcy petition and then failed to respond to the court's order to show cause why the petition should not be dismissed due to the defect, and (6) failed to file mandatory notices or to cure his error despite a court order. The Hearing Committee further concluded that Mr. Butler seriously interfered with the administration of justice while representing three of the clients at issue by failing to respond to filings and court orders and failing to appear at court hearings.

During the hearing before the Hearing Committee, Mr. Butler claimed that his omissions could be excused as "inadvertent" or blamed on his staff's failures.

### 3. Count III

Regarding Mr. Butler's actions during his client Mr. Clayton's personal-injury case, the Hearing Committee found that Mr. Butler (1) failed to file required documents with the complaint despite repeated extensions and reminders from the court; (2) failed to serve a required summons on the defendant in the case; (3) failed to correct both of these errors despite a court order instructing him to do so; (4) failed to respond to two show-cause orders from the court; and (5) failed to appear at four court-ordered show-cause hearings.

Mr. Butler claimed that these problems were inadvertent and the result of his staff's errors, an incorrect address listed in PACER, a hacking incident, and an email virus, although this last only occurred after the first show-cause order. Mr. Butler repeatedly informed the court he had corrected his contact information, but he had not, and he continued to miss hearings and failed to respond to orders as a result. Mr. Clayton's case was ultimately dismissed, and because Mr. Butler had not filed the case until the last day of the statute of limitations period, Mr. Clayton was left with no recourse.

The Hearing Committee concluded that Mr. Butler's handling of Mr. Clayton's matter lacked competence and diligence and interfered with the administration of justice.

### 4. Sanction

On the issue of sanction, the Hearing Committee concluded that Mr. Butler's conduct (1) was serious and often jeopardized his clients' ability to keep their homes or properties during bankruptcy; (2) was very prejudicial to his clients; (3) was not knowingly dishonest, nor was Mr. Butler's testimony knowingly dishonest; and (4) violated many rules in several matters for different clients over the course of several years. In addition, the Hearing Committee noted that Mr. Butler's consistent

provision of excuses, lack of accountability, and inability to correct mistakes weighed against imposing a short suspension. The Hearing Committee noted that Mr. Butler had no previous disciplinary history and explained that it saw no other mitigating or aggravating circumstances.

The Hearing Committee recommended that Mr. Butler be suspended for six months with ninety days stayed in favor of a one-year period of probation with conditions. If Mr. Butler violated those conditions, the Hearing Committee recommended a showing of fitness before he could resume the practice of law. The Hearing Committee did not otherwise recommend a fitness requirement.

### C. The Board's Report and Recommendation

The Board adopted all of the Hearing Committee's findings of fact and concluded that the Rule violations discussed above were supported by clear and convincing evidence.

On the issue of sanction, the Board agreed with the Hearing Committee that Mr. Butler's repeated misconduct involving multiple clients "over a period of three years warrants a lengthy suspension." The Board recommended against a stay of the suspension, however, explaining that Mr. Butler's conduct did not appear to be a deviation from his typical legal practice. The Board further found several

aggravating factors: Mr. Butler neglected his clients and responsibilities to the court for an extended period of three years; Mr. Butler's conduct did not improve despite being aware of Disciplinary Counsel's investigation; and Mr. Butler's clients had "known vulnerabilities." The Board found no mitigating circumstances other than Mr. Butler's lack of prior disciplinary history.

Finally, regarding the fitness requirement, the Board expressed serious doubt about Mr. Butler's ability to follow the ethical rules. The Board noted Mr. Butler's repeated misrepresentations that he had taken remedial actions to improve his responsiveness to the courts. The Board also emphasized the gravity and pervasive nature of Mr. Butler's conduct. Considering all of the circumstances, the Board recommended that Mr. Butler be suspended for six months with a requirement that he demonstrate fitness before being reinstated.

## II. Analysis

### A. Standard of Review

In considering a recommendation of the Board, this court will defer to the Board's findings of fact if those findings are supported by substantial evidence. *In re Haar*, 270 A.3d 286, 294 (D.C. 2022). "The burden of proving disciplinary charges rests with Bar Counsel, and the Board's factual findings must be supported

by clear and convincing evidence." *In re Johnson*, 275 A.3d 268, 280 (D.C. 2022) (per curiam) (internal quotation marks omitted). The Board must defer to the findings of fact made by a Hearing Committee, unless the Hearing Committee's findings are not supported by substantial evidence. *Id.* at 275. We owe no deference to the determination of legal issues by either the Board or the Hearing Committee. *In re Krame*, 284 A.3d 745, 752-55 (D.C. 2022).

In determining what sanction to impose for violations of the Rules of Professional Conduct, this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "[A] sanction recommendation from the Board comes to us with a strong presumption in favor of its imposition." *In re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam) (internal quotation marks omitted). "In general, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *Id.* (internal quotation marks omitted).

## B. Procedural Objections

Mr. Butler raises three procedural objections. First, he argues that the Hearing Committee was required to conduct separate hearings with respect to Counts I and II. We disagree. This court has regularly permitted the consolidation of separately docketed matters involving different incidents for decision by a single hearing committee. *See, e.g.*, *In re Hines*, 482 A.2d 378, 383 (D.C. 1984) (per curiam) ("[T]he simultaneous consideration by one hearing committee of all the charges brought against respondent was well within the committee's power. . . . It is not unusual for a single committee to weigh at one time charges against an attorney stemming from his dealings with more than one client; indeed, such cases are almost routine."). Moreover, Mr. Butler has made no plausible claim of prejudice.

Second, Mr. Butler suggests that the testimony of an expert was required to demonstrate that his handling of some of his clients' matters lacked competence. We disagree. Rather, we hold that no special expertise was required to permit the Hearing Committee and the Board to determine whether Mr. Butler's conduct was lacking in competence. *Cf., e.g.*, *In re Winstead*, 69 A.3d 390, 397 n.9 (D.C. 2013) (Bar Counsel was not required to call expert witness because whether respondent's communications were false or misleading did not "require[] technical or specialized knowledge"); *Liu v. Allen*, 894 A.2d 453, 460 (D.C. 2006) ("[A]n attorney's

negligence sometimes may be so clear, even if an explanation is attempted, that expert testimony is superfluous and the attorney even may be found negligent as a matter of law.") (internal quotation marks omitted).

Third, Mr. Butler suggests in passing that an opinion rendered by one of the bankruptcy judges was hearsay. Mr. Butler does not actually present an argument as to why the evidence at issue was inadmissible in a disciplinary proceeding. *See generally, e.g.*, *In re Kennedy*, 605 A.2d 600, 603 (D.C. 1992) (per curiam) ("Disciplinary hearings are not governed by strict rules of evidence."). Because Mr. Butler has not presented an argument on this point, we decline to consider the point. *See generally, e.g.*, *Miller v. United States*, 209 A.3d 75, 80 (D.C. 2019) (declining to address issue that was not adequately briefed on appeal).

## C. Violations

Essentially for the reasons stated in the thorough and careful reports of the Hearing Committee and the Board, we accept the Board's findings of fact and conclusions with respect to the violations that the Board concluded had been established. We are not persuaded by Mr. Butler's arguments to the contrary.

First, Mr. Butler argues that some of his clients would have eventually lost their cases no matter what Mr. Butler did or failed to do. A lawyer's obligation to

provide competent representation, however, is not contingent on whether the client will ultimately win the case. Rather, we have held that a lawyer's incompetent performance is sanctionable under D.C. R. Pro. Conduct 1.1 if the incompetence "prejudices or could have prejudiced" a client. *In re Yelverton*, 105 A.3d 413, 422 (D.C. 2014) (internal quotation marks omitted). Moreover, as described above, the reports of the Hearing Committee and the Board in this case carefully explained how numerous of Mr. Butler's omissions did prejudice or could have prejudiced his clients.

Second, Mr. Butler also argues that he had a duty not to file frivolous pleadings, which restricted his ability to represent his clients. That concern does not justify many of Mr. Butler's omissions. Moreover, as described above, the reports of the Hearing Committee and the Board in this case detail numerous steps Mr. Butler could appropriately have taken to protect his clients' interests but failed to take.

Third, Mr. Butler argues that his omissions were inadvertent. That is not a defense to a charge of failure to act with the requisite competence. *See, e.g.*, *In re Yelverton*, 105 A.3d at 422 (D.C. R. Pro. Conduct 1.1 reaches conduct that is negligent and prejudices or could have prejudiced a client).

## D. Sanction

Essentially for the reasons stated by the Board, we adopt the Board's recommended sanction of a six-month suspension with a requirement of fitness before reinstatement.

> When determining the appropriate disciplinary sanction, we evaluate (1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances . . . .

*In re Blackwell*, 299 A.3d 561, 573 (D.C. 2023) (internal quotation marks omitted).

We agree with the Board that Mr. Butler's repeated misconduct, involving eight matters over a period of three years, warrants an unstayed six-month suspension. *See, e.g.*, *In re Lyles*, 680 A.2d 408, 408-09 (D.C. 1996) (per curiam) (imposing unstayed six-month suspension with fitness requirement based on attorney's lack of competence and neglect in four bankruptcy matters as reflected in attached report and recommendation).

We also agree with the Board's recommendation of a fitness requirement. "To require proof of fitness as a condition of reinstatement after suspension, the record in the disciplinary proceeding must contain clear and convincing evidence that casts

a serious doubt upon the attorney's continuing fitness to practice law." *In re Peters*, 149 A.3d 253, 260 (D.C. 2016) (per curiam) (internal quotation marks omitted). In determining whether to impose a fitness requirement, we consider:

> (1) the nature and circumstances of the misconduct; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*In re Bailey*, 283 A.3d 1199, 1211 (D.C. 2022) (internal quotation marks omitted).

Essentially for the reasons stated by the Board, we agree that those factors support imposition of a fitness requirement in this case. Over a period of several years, Mr. Butler repeatedly failed to keep his clients informed, respond to court notices, file timely and proper documents, cure deficient filings, and attend court-ordered appearances. That pattern of conduct prejudiced multiple clients and leaves us with a serious doubt as to Mr. Butler's fitness to continue practicing law. *See, e.g.*, *In re Mintz*, 626 A.2d 926, 927 (D.C. 1993) (per curiam) (citing cases in which court imposed fitness requirement in cases involving "gross and persistent negligence of client matters").

Accordingly, respondent Craig Butler is hereby suspended from the practice of law for six months, with reinstatement conditioned on a showing of fitness. The

period of suspension will begin to run when Mr. Butler files an affidavit that fully complies with the requirements of D.C. Bar R. XI, § 14, governing the responsibilities of suspended attorneys. *E.g., In re Keller*, 308 A.3d 201, 202 (D.C. 2024) (per curiam).

*So ordered.*