**In the Matter of Kristan PETERS, Respondent.**

**No. M–2–238.**

United States District Court, S.D. New York.

April 10, 2013.

As corrected April 15, 2013.

**360**

## OPINION AND ORDER

COLLEEN McMAHON, District Judge.

**BEFORE THE COMMITTEE ON GRIEVANCES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**[1]

The Committee on Grievances for the United States District Court for the Southern District of New York (the "Committee"), having received and reviewed the Report and Recommendation of the Honorable Lisa Margaret Smith, United States Magistrate Judge, which recommended

that the Respondent be adjudged guilty of Charges One and Three of the Committee's charging instrument, and after consideration of the objections filed by Respondent Peters and the response to those objections filed by Complainant's Counsel, it is hereby

ORDERED that

(1) the Report of Judge Smith is adopted as the Committee's Findings of Fact and Conclusions of Law except as specifically noted herein;

(2) Respondent's Objections are rejected for substantially the reasons set forth in the Response to the Objections filed by Complainant's Counsel; and

(3) Respondent is Adjudicated GUILTY of Charges One and Three in the Committee's Charging Instrument; and

(4) Respondent is suspended from the practice of law in this District for a term of seven years, *nunc pro tunc* to April 10, 2008.

## BACKGROUND

Magistrate Judge Smith's Report contains a full recital of the background to this order. The Committee originally found Respondent guilty of two separate disciplinary violations arising out of her representation of Wolters Kluwer in a matter pending in this district before the Hon. Harold Baer, U.S.D.J., entitled *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 07 Civ. 2352(HB). It originally voted to disbar Ms. Peters, but on reconsideration reduced the sanction to a seven-year suspension, *nunc pro tunc* to April 10,

---

**1.** The members of the Committee are District Judge P. Kevin Castel, Chair; Chief Judge Loretta A. Preska; District Judges Vincent L. Briccetti, Katherine B. Forrest, Paul G. Gardephe, John F. Keenan, Colleen McMahon, Louis L. Stanton, and Richard J. Sullivan; and Magistrate Judge Frank Maas. Judge Briccetti took no part in the consideration of this matter.

2008, the date on which her interim suspension *pendente lite* had commenced.

Respondent appealed. The Second Circuit (1) affirmed the Committee's finding that Ms. Peters had violated a confidentiality order in Judge Baer's case (Charge Three) but remanded to this Court for findings on the culpability of her mental state; and (2) vacated the suspension order to the extent it was based on the so-called "Brackett charge" (Charge One), on the ground that the Committee had erred in not holding a hearing on that charge, relying instead on doctrines of former adjudication.[2] The mandate issued on April 25, 2011.

The Committee immediately assigned the matter to then-Chief Magistrate Judge George A. Yanthis with instructions that he conduct such pre-hearing proceedings as he deemed appropriate, preside at a hearing into the matters comprehended by the remand, and provide the Committee with a Report recommending how it should resolve the outstanding charges. The Committee appointed David Tulchin, Esq., of Sullivan & Cromwell, to serve as Complainant's Counsel.

The Committee had hoped that Judge Yanthis would be able to conduct the hearing expeditiously, since it had already been three years since Ms. Peters' suspension *pendente lite*. That, sadly, was not to be. Between September 2011 and April 2012, Judge Yanthis conducted thirteen pre-hearing conferences and superintended an extended period of pre-trial discovery, all as chronicled by Magistrate Judge Smith in her Report. The delay was due almost entirely to objections to demands for discovery and motions to limit the scope of the hearing filed by Ms. Peters, although Committee Counsel also filed several applications for relief. Judge Yanthis overruled Ms. Peters' pre-hearing objection to conducting any proceedings with respect to Charge One (hereinafter, the "Brackett charge"), and directed the parties to a hearing on that charge and on Charge Three to the extent of determining Ms. Peters' mental state at the time of the violation. (Tr. 9/5/11 at 13.) During pre-trial discovery, Ms. Peters took a total of five depositions, while Committee Counsel took only one—that of Ms. Peters.

The hearing was finally scheduled for June 2012, but Judge Yanthis was unable to proceed as scheduled. To avoid further delay, Magistrate Judge Smith stepped in to preside at the hearing. It commenced in June 2012 and extended well into August, after which both sides were afforded time to submit post-hearing briefs. Both judges worked tirelessly to bring this matter to a conclusion; the Committee is grateful for their efforts.

Judge Smith issued a 118–page Report on January 23, 2013, in which she made extensive, record-based findings, some of which were based principally on the credibility of witnesses. In brief, she concluded that: (1) in connection with Charge One, Ms. Peters had indeed (i) instructed Jordan Brackett, a first year associate at her firm, to place handwritten marks on deposition transcripts so that the firm could claim "work product" with respect to them and avoid returning them to the Court as ordered, and (ii) attempted to mislead the

---

**2.** In the Grievance Committee's January 2008 order directing Ms. Peters to show cause why she should not be disciplined, she also was charged with a third violation (Charge Two): "participat[ing] in a conference with the [district court] to adjourn a TRO hearing and discuss future depositions at a time when [Peters] knew that those depositions and the TRO hearing would not take place." *In re Peters*, M–2–238, doc. 51, at 2 (S.D.N.Y. 2008). However, the Committee did not find her guilty of that allegation or suspend her on that basis.

Court about her conduct, all in violation of DR 1–102(A)(4) (engaging in conduct involving fraud, dishonesty, deceit or misrepresentation) and DR 7–102(A)(5) (knowingly making a false statement of fact or law); (2) in connection with Charge Three, Ms. Peters copied transcripts and ordered additional copies of transcripts with intentional disregard of court orders, and then used the transcripts in an action in Massachusetts in violation of the Court's Confidentiality Order in violation of DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice) and DR 7–106(A) (disregarding the ruling of a tribunal made in the course of a proceeding); and (3) Ms. Peters acted with a culpable state of mind when she engaged in the specific misconduct with which she was charged. Judge Smith recommended the imposition of a five-year suspension, *nunc pro tunc* to April 10, 2008, which meant that, if the Committee adopted her recommendation, the suspension would end on April 10, 2013.

In view of Judge Smith's recommendation, the Committee set an expedited schedule for the filing of objections by Ms. Peters and responses by Complainant's Counsel so that the matter could be considered at the Committee's March 14, 2013 meeting. Keeping to that schedule, Ms. Peters identified her objections to the Report in a filing made on February 8, 2013, and filed a brief in support of her objections on February 22, 2013. Complainant's Counsel filed a response to the Objections on March 8, 2013. In addition to these filings, the hearing record and post-hearing briefs were made available to the Committee.

## DISCUSSION

### I. *The Charges*

The Magistrate Judge's Report carefully and thoroughly discusses the evidence and the arguments made by both sides concerning the two critical questions that the Committee was required to answer: (1) did Ms. Peters violate DR 1–102(A)(4) (engaging in conduct involving fraud, dishonesty, deceit or misrepresentation) and DR 7–102(A)(5) (knowingly making a false statement of fact or law) in connection with the Brackett charge; and (2) did Ms. Peters violate DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice) and DR 7–106(A) (disregarding the ruling of a tribunal made in the course of a proceeding) when, as the Second Circuit had already concluded, she violated the terms of a protective order entered by Judge Baer on April 12, 2007.[3] Judge Smith's Report is thorough and well-documented and her every conclusion is amply supported by the evidence she cites.

■ To the extent that Judge Smith's findings rest on credibility determinations, they are, of course, entitled to substantial deference. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *In re Dale*, 87 A.D.3d 198, 200, 927 N.Y.S.2d 267 (4th Dep't 2011); *Matter of Wasserman*, 50 A.D.2d 299, 300, 377 N.Y.S.2d 487 (1st Dep't 1975). In any event, the Committee

---

**3.** The fact that the Second Circuit affirmed the Committee's conclusion that Ms. Peters violated the Confidentiality Order, *In re Peters*, 642 F.3d 381, 393–94 (2d Cir.2011), meant that Ms. Peters was precluded from making arguments to the contrary in the hearing before Judge Smith. *See United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir.2002) ("The law of the case ordinarily 'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir.2001))). The question remaining with respect to the Confidentiality Order was whether Ms. Peters acted with a culpable state of mind when she violated it.

has no reason to question those credibility determinations—in particular, her conclusion that Ms. Peters was not a credible witness—because they are supported by substantial evidence.

To cite but a few examples: Ms. Peters continues to argue that she was not aware of the terms of the Confidentiality Order that she violated. But the evidence revealed the contrary. During the week following the entry of the Confidentiality Order, Ms. Peters sent a number of e-mails that demonstrated her familiarity with the terms of the Confidentiality Order. Ms. Peters argues that she believed the terms of Judge Baer's Order did not bar use of the transcripts in the Massachusetts action, because that lawsuit was "the same lawsuit" as the one before Judge Baer, just refiled in a new jurisdiction. But the evidence showed that Respondent was told twice—in writing—by her law partner Marc Reiner that the Order prohibited the "use" of protected material in another litigation, and that, during the relevant time period, Ms. Peters repeatedly referred to the Massachusetts action, filed when the action before Judge Baer was discontinued, as a "new" case. (Report at 73–77.)

Further, throughout the hearing before Judge Smith, Ms. Peters was blatantly untruthful about her role in the *Wolters Kluwer* matter. Ms. Peters actually resisted acknowledging that she was counsel of record in the *Wolters Kluwer* case filed in this District. (Report at 101 (citing Tr. 7/10/12 at 1286–90).) She denied that the client was looking to her, as the partner-in-charge, to handle the whole case. This is in direct contrast to Ms. Peter's e-mail sent to her junior partner Mr. Reiner on April 18, 2007, in which she insisted that the client wanted "everything" go through her, even while she was away on vacation. (Report at 102 (citing GC Ex. 88 at 1).) Ms. Peters also disavowed responsibility for documents which were filed over her signature. (Report at 104–06.) Her effort to minimize her role in the lawsuit and the unfolding events seriously wounded her credibility in the eyes of Judge Smith and of the Committee.

Ms. Peters' objections to Judge Smith's Report border on the frivolous, further reinforcing the Magistrate Judge's conclusion that Respondent was not truthful in her hearing testimony. Among other things, Ms. Peters' objections to the Report repeatedly misstate or distort the record. Again, we cite but a few examples that were emphasized by Committee Counsel.

Ms. Peters objected to Judge Smith's determination that Eileen Brennan, Ms. Peters' former secretary, was not a credible witness at the hearing. (Kristan Peters' Feb. 22, 2013 "Consolidated Objections and Disciplinary Brief" ("Resp. Br.") at 2–10.) According to Ms. Peters, Judge Smith rejected Ms. Brennan's testimony because (1) the Magistrate Judge "found Brennan to be crazy," and (2) "relying merely on conjecture," Judge Smith concluded "that Peters might have suggested testimony to Brennan." (Resp. Br. at 3.) This is a mischaracterization of Judge Smith's findings. What Judge Smith actually said in her Report was that she found it strange that Peters was arguing that Brennan was credible, since Peters herself had testified that Brennan was "crazy" and "mentally ill." (Report at 63.) And Judge Smith did not engage in conjecture when she held that Brennan had testified in accordance with Peters' instructions; the witness conceded as much on cross-examination. (Report at 62–63.) Respondent's objection to Judge Smith's finding with respect to Ms. Brennan simply does not withstand scrutiny.

In connection with Charge Three, where the issue before the Magistrate Judge was

whether Ms. Peters acted with a culpable state of mind, her objections blatantly mischaracterize the record evidence about her acquisition of duplicate copies of deposition transcripts from the court reporting service about 28 hours after Judge Baer ordered that *all* copies of *all* deposition transcripts be delivered to him. Judge Baer issued his order on April 19. On April 21, Ms. Peters emailed her client and explained that the "the next step" for preserving evidence in the "new case" was, among other things, "sending the transcripts to the new judge." (GC Ex. 102.) Twenty-one minutes after sending that email to her client, Ms. Peters emailed the court reporting service, claiming that she had "misplaced" the discs of the deposition transcripts, and requesting additional copies. (GC Ex. 103.) Of course, the discs were not misplaced at all; they had been turned over to Judge Baer in compliance with his order.

At the hearing before Judge Smith, Ms. Peters testified that the reason she ordered new copies of the transcripts, even though Judge Baer had issued explicit instruction that all copies be returned to him, was so that the court reporter could file them with the Clerk of Court in this District. (Tr. 8/15/12 at 2246–2247.) The only evidence that the court reporter was ever asked to make such a filing is the testimony of Ms. Peters herself, who claims that she originally instructed the court reporter to file the transcripts, but then reversed course once the court reporter told her that she couldn't file transcripts in a matter was under seal. (Tr. 8/15/12 at 2249.) But this testimony is highly suspect, since in this District deposition transcripts are not routinely filed with the Clerk of the Court. The court reporter who might have confirmed Ms. Peters' unlikely story was not called as a witness.

Overwhelming evidence (summarized by Judge Smith in her Report at p. 68) demonstrates that the real reason Ms. Peters placed the order was so that she could send the transcripts to the judge in the Massachusetts action in circumvention of the Confidentiality Order. The fact that Ms. Peters deliberately elected to obtain additional copies of the transcripts after being ordered to surrender them, did so by lying to the court reporter (she told the reporter that Dorsey's copies had been lost), and then made up a far-fetched and wholly implausible explanation for her conduct, is strong evidence of her culpable state of mind in connection with that particular charge. Ms. Peters' contention that the testimony of another witness, Jonathan Herman, corroborates her contrived story is unsupported by Herman's actual testimony, which relates to a completely different topic. (Resp. Br. at 19 (citing Tr. 7/2/12 at 342:22–344:4).)

Lacking any basis in substance to object successfully to Judge Smith's conclusion about the ordering of transcripts, Ms. Peters criticizes the Magistrate Judge for reaching any finding on that issue, arguing that "the [Charging Attorney] did not address the copying of transcripts charge." (Resp. Br. at 14.) This argument is misleading. The Second Circuit has already affirmed this Committee's earlier finding that Ms. Peters violated Judge Baer's protective order; it remanded so we could ascertain whether she acted culpably when she did so. The evidence relating to the ordering of the transcripts—her stealth, her lying to the court reporter in order to obtain them, and her ridiculous assertion about why she needed them—was probative of her culpable state of mind in connection with this violation, so it would have been problematic if Judge Smith had not addressed it. Furthermore, Committee Counsel urged all along, including in the discovery phase of the case, that Ms. Pe-

ters ordered additional transcripts in intentional disregard of court orders, and made prominent mention of this evidence in both his Post–Hearing Memorandum (pages 6–7) and its Response to Kristan Peters' Post–Hearing Memorandum (pages 3–4). Judge Smith's conclusion that Ms. Peters acted with a culpable state of mind by ordering additional copies of transcripts from the court reporter after Judge Baer had issued an order directing the return of all deposition transcripts to the Court was well-supported by the evidence. (Report at 68.)

Ms. Peters' criticisms of Judge Smith's findings relating to the Brackett charge are also unfounded. For example, Ms. Peters takes issue with Judge Smith's finding that Respondent "does not dispute that she told Brackett to mark up clean deposition transcripts." (Report at 60–61 (citing Tr. 7/23/12 at 1812; Tr. 8/15/12 at 2387–88, 2405).) Ms. Peters claims that Judge Smith made this finding "[w]ithout citation to anything in the record that comes close to supporting that." (Resp. Br. at 10.) This is nonsense. Ms. Peters never once denied telling Brackett to make marks on the transcripts. Rather, she attempted to excuse what she admittedly did, by saying that her order that first-year associate Brackett " 'make [the transcripts] work product' " (Tr. 8/15/12 at 2387–88) was meant to be "joking," "mocking," or "sarcastic" (Tr. 7/3/12 at 427; Tr. 8/15/12 at 2405; Tr. 7/23/12 at 1812; Tr. 8/15/12 at 2387–88.). Judge Smith quotes Respondent's testimony verbatim in her Report. (Report at 61.) The Committee finds Respondent's post-hearing assertions in this regard to be contrary to the evidence and ill-supported—and entirely of a piece with Ms. Peters' conduct relating to Brackett and the doctoring of the deposition transcripts, which we unanimously view as her most serious transgression.

In sum, the Committee sees no merit in the objections and accepts Judge Smith's recommendation that, after a full hearing on the merits, Charges One and Three as set forth in the charging instrument be sustained.

## II. *Sanction*

■ Having sustained Charges One and Three, we turn to the appropriate penalty.

Ms. Peters was suspended *pendente lite;* that suspension began April 10, 2008. After sustaining the charges in 2008, the Committee originally determined to disbar Ms. Peters. Upon reconsideration, we remitted the penalty to a seven-year suspension. When the Second Circuit remanded Respondent's case to this Court for further proceedings, her status automatically reverted to "interim suspension." We understand that Ms. Peters has been practicing law in the state courts of New York and Connecticut, and in the federal courts for the Eastern District of New York and the District of Connecticut, but not in this District, since she was suspended by this court. We are unaware of any further disciplinary infractions or charges that have been proffered against her during this period.

Magistrate Judge Smith recommended that Ms. Peters be suspended until April 10, 2013—a total of five years, which is 35% less than the term of suspension previously imposed by the Committee. Judge Smith took note of the seriousness of Ms. Peters' misconduct—including, *inter alia,* her poor behavior throughout the course of the disciplinary proceeding—but she concluded that five years was a sufficient penalty in light of the fact that (1) only two charges remain pending against Ms. Peters, and (2) these are the only charges which have ever been brought against Ms. Peters in her 25–year career. (Report at 116.) Judge Smith noted that she had

found no case in which a suspension longer than the period for which Ms. Peters has already been suspended was imposed for the type of misconduct at issue. (*Id.* at 83.) Judge Smith's recommendation on penalty was specifically endorsed by Complainant's Counsel. (Response to Objections to Report & Recommendation at 23.)

The Committee takes Judge Smith's recommendation quite seriously. That said, the Committee believes that a seven-year suspension is the appropriate penalty in this case.

Ms. Peters' most serious failing involves the corruption of a young and inexperienced lawyer, over whom she had power and authority, and whom she ordered to commit conduct that could have ended with his own disciplinary hearing. To abuse a fledgling attorney strikes the members of the Committee as particularly heinous. Indeed, in the eyes of the Committee, Ms. Peters has compounded her original serious error by persisting in treating her order to Mr. Brackett as a "joke" and by branding him a liar. She exhibits no remorse for her inappropriate conduct; rather, she arrogantly persists in trying to salvage her reputation at the expense of the unfortunate Mr. Brackett—branding him and others at the Dorsey firm as liars when it is she who has consistently lied, both about what she did and about why she did it.

Equally problematic is Respondent's habit of twisting the truth. At the hearing, Ms. Peters continually tried to shift blame to virtually every other person who came within arm's length of the *Wolters Kluwer* case, including junior associate Mr. Brackett, senior associate Deirdre Sheridan, and junior partner Mr. Reiner. (Report at 99–100; 102–104.) At one point,

Ms. Peters blamed her own client for her predicament, because the client authorized the filing of the Massachusetts action. (Report at 104 (citing Tr. 8/15/12 at 2322).) Respondent's flagrant mischaracterization of the record, and her meritless objections to Judge Smith's carefully crafted and amply supported findings, indicate that she has yet to accept any responsibility for what the Committee views as serious professional wrongdoing.

So notwithstanding Judge Smith's cogent citation to other cases where the penalties imposed were lesser, the Committee believes that this case is *sui generis*—and deserving of a longer punishment.

### CONCLUSION

For the reasons stated in Judge Smith's Report and Recommendation (adopted as the Findings of Fact and Conclusions of Law of the Committee) and in this Opinion and Order, the Grievance Committee of the Southern District of New York hereby ORDERS that Respondent Kristen Peters, also known as Kristan Peters–Hamlin,[4] be suspended from the practice of law in this district for a period of seven years, dating from April 10, 2008.

SO ORDERED.

---

4. Ms. Peters is registered in New York as "Kristan Peters" and in Connecticut as "Kristan Peters–Hamlin."