*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-699

FILED **11/23/16**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

IN RE KRISTAN L. PETERS, Respondent.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 415989)

On Report and Recommendation
of the Board on Professional Responsibility
(BDN-113-15)

(Submitted January 6, 2016                              Decided November 23, 2016)

*Kristan Peters*, pro se.

*Wallace E. Shipp, Jr.*, Disciplinary Counsel, and *William R. Ross*, Assistant Disciplinary Counsel, for the Office of Disciplinary Counsel.

Before BECKWITH and EASTERLY, *Associate Judges*, and KING, *Senior Judge*.

PER CURIAM: On April 10, 2013, after finding that respondent Kristan Peters had violated several professional rules, the Committee on Grievances of the United States District Court for the Southern District of New York (SDNY Committee) suspended Ms. Peters from the practice of law for seven years. The District of Columbia Office of Disciplinary Counsel now recommends that we

impose reciprocal discipline and suspend Ms. Peters for five years, with reinstatement conditioned upon proof of fitness to practice law. Although D.C. Bar R. XI, § 11 (e) generally requires this court to impose reciprocal discipline, Ms. Peters argues that all five enumerated exceptions to this rule apply in her case. Concluding that only one exception applies—namely, that Ms. Peters would be subject to substantially different discipline in this jurisdiction—we suspend Ms. Peters from the practice of law in the District of Columbia for a period of three years, *nunc pro tunc* to July 2, 2015,[1] with reinstatement predicated on a finding of fitness. *See* D.C. Bar R. XI, §§ 3 (a)(2), 11 (e), 14 (h), 16 (a).

## I.    Background

At the time the misconduct at issue in this case occurred, Ms. Peters was working for the law firm Dorsey & Whitney, LLP (Dorsey).[2] On behalf of its client Wolters Kluwer Financial Services, Inc. (Wolters), Dorsey sued four former Wolters employees in the Southern District of New York for allegedly divulging proprietary information to their new employer. Discovery was conducted under a confidentiality order providing that certain materials "shall not be used [in] any

---

[1] On July 2, 2015, this court ordered Ms. Peters's interim suspension.

[2] The facts here are drawn from *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110, 112-13 (2d Cir. 2009).

other litigation proceeding." After concerns were raised over personal jurisdiction, Dorsey dismissed the suit in New York and refiled it in Massachusetts. Despite court orders from the judge in New York, Ms. Peters, the partner in charge, delayed returning confidential discovery material (including deposition transcripts) and attached 115 pages of that material to a motion for temporary injunctive relief filed in the Massachusetts case.

The judge presiding over the New York case sanctioned Ms. Peters and forwarded a copy of the decision to the SDNY Committee, which suspended her for seven years backdated to April 10, 2008, the date she had first been temporarily suspended pending process. *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 525 F. Supp. 2d 448, 541, 550-51 (S.D.N.Y. 2007), *aff'd in part, rev'd in part*, 564 F.3d 110 (2d Cir. 2009).[3]

Because we see no basis for disturbing the SDNY Committee's findings, see

---

[3] The first disciplinary decision by the SDNY Committee after receipt of the opinion ordering sanctions was vacated and remanded for lack of appropriate process. *In re Peters*, 543 F. Supp. 2d 326 (S.D.N.Y. 2008), *vacated*, 642 F.3d 381 (2d Cir. 2011) ("[W]e do not intend to suggest that the charges against Peters were improperly brought, only that certain procedures and findings were inadequate."). Our decision is based only on the subsequent SDNY Committee decision and the decision affirming it. *In re Peters*, 941 F. Supp. 2d 359, *as corrected* (Apr. 15, 2013), *aff'd sub nom. Peters v. Comm. on Grievances for U.S. Dist. Court*, 748 F.3d 456 (2d Cir. 2014).

part II, *infra*, we accept the facts as set out in the SDNY Committee's order and in a 118-page report written by a federal magistrate judge and adopted by the Committee. *See* D.C. Bar R. XI, § 11 (c); *In re Peters*, 941 F. Supp. 2d at 360-62, 366.

The magistrate's report canvasses the record and supports the conclusion that Ms. Peters: (1) copied and ordered additional deposition transcripts in violation of court orders for use in the new but related action in Massachusetts and thus knowingly violated a confidentiality order entered by the presiding judge in the first case; and (2) instructed a first-year associate at Dorsey to add markings to deposition transcripts in an attempt to bring them under the protection of the attorney work-product privilege and exempt them from the presiding judge's order that all discovery be returned, and thereafter misled the court about what she had done.

## II.    Imposition of Reciprocal Discipline

In the District of Columbia, an attorney suspended or disbarred in another jurisdiction will have identical reciprocal discipline imposed on her unless she demonstrates, by clear and convincing evidence, that:

> (1)  The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2)   There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusions on that subject; or

(3)  The imposition of the same discipline would result in grave injustice; or

(4)   The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C. Bar R. XI, § 11 (c).

Here, Ms. Peters argues against the imposition of reciprocal discipline under each of the five prongs.   Under D.C. Bar R. XI, § 11 (c), "[u]nless there is a finding by the Court under (1), (2), or (5)," an attorney will not be permitted to relitigate issues settled by another court.  *Id.*; *see also In re Richardson*, 602 A.2d 179, 181 (D.C. 1992).  Ms. Peters has not satisfied this burden.[4]  We do conclude, however, that her conduct warrants substantially different discipline in the District of Columbia, and thus impose non-identical final discipline.  *See* D.C. Bar R. XI,

---

[4]   Though Ms. Peters points out that other jurisdictions have declined to impose reciprocal discipline against her, we follow our own law in making an independent determination whether reciprocal discipline is warranted in any given case.

§ 11 (e).

## A. Deprivation of Due Process

Ms. Peters was afforded thirteen prehearing conferences and a thirteen-day hearing that culminated in the issuance of a 118-page report on January 23, 2013, which was carefully reviewed and adopted by the SDNY Committee. *In re Peters*, 941 F. Supp. 2d at 361. The Second Circuit, affirming her suspension, remarked that Ms. Peters had been given "a very great deal of process," and Ms. Peters subsequently filed a petition for writ of certiorari with the United States Supreme Court. *Peters v. Comm. on Grievances for U.S. Dist. Court* 748 F.3d 456, 462 (2d Cir.), *cert. denied*, 135 S. Ct. 448 (2014). Ms. Peters was afforded at least the minimum notice and opportunity to be heard to which she was constitutionally entitled and has not been deprived of due process.

## B. Infirmity of Proof

The SDNY Committee, in reviewing the 118-page report written by the magistrate judge, found it "thorough and well-documented" and found "every conclusion . . . amply supported by the evidence." *In re Peters*, 941 F. Supp. 2d at 362. The Committee adopted the magistrate's report but chose to impose a seven-year suspension rather than the five years that the magistrate recommended. *Id.* at

360, 366.

Ms. Peters has failed to show by clear and convincing evidence that there "was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusions on that subject." D.C. Bar R. XI, § 11 (c)(2). Ms. Peters's attacks on the factual findings that establish her misconduct implicitly target the magistrate's careful credibility determinations regarding the live testimony before her, including a finding that Ms. Peters's testimony was not credible. "[I]t is axiomatic that determinations of credibility and the weighing of evidence are within the province of the fact-finder." *In re Kanu*, 5 A.3d 1, 10 (D.C. 2010) (alteration in original) (quoting *Ventura v. United States*, 927 A.2d 1090, 1104 (D.C. 2007)). Ms. Peters's filings do not show by clear and convincing evidence that the magistrate's findings, adopted by the SDNY Committee, were unsupported.

### C. Grave Injustice

Ms. Peters highlights the almost eight years that have elapsed since the New York disciplinary proceedings began, asking the court to conclude that imposition of an identical sanction would be a grave injustice. We have already foreclosed such an argument in *In re Davy*, 25 A.3d 70 (D.C. 2011), where, in response to the attorney's contention that the seven-year delay between the original imposition of

discipline and the reciprocal discipline action constituted a "grave injustice," we held that "when the delay of judicial decision-making is largely a result of the respondent's own actions or inactions, such circumstances are not sufficiently unique or compelling to mitigate discipline." *Id.* at 73-74 (citing *In re Fowler,* 642 A.2d 1327, 1331 (D.C. 1994)). We reach the same conclusion here, where Ms. Peters failed to notify Bar Counsel that she had been disciplined in another jurisdiction until seven years after her first interim suspension in the Southern District of New York. *See infra* Part III.

Ms. Peters's further argument that punishment serves no purpose because her 28-year career is otherwise unblemished and there is no reason to believe she will reoffend is also unavailing. The SDNY Committee found that Ms. Peters had a "habit of twisting the truth," that she "continually tried to shift blame to virtually every other person who came within arm's length of the *Wolters Kluwer* case," and that she had "flagrant[ly] mischaracterize[ed] . . . the record," and made "meritless objections." *In re Peters*, 941 F. Supp. 2d at 366. The Committee concluded that this behavior "indicate[d] that she ha[d] yet to accept any responsibility for what the Committee views as serious professional wrongdoing." *Id.* Because Ms. Peters continues to deny any responsibility for her actions and has persisted in long-rejected characterizations of the record, identical punishment would not constitute a grave injustice.

## D. Substantially Different Discipline in the District of Columbia

Disciplinary Counsel concedes that a reciprocal seven-year suspension would be inappropriate, as this would be a longer period than standard for disbarment and far longer than allowed in an ordinary suspension case originating in the District of Columbia. *See* D.C. Bar R. XI, §§ 3 (a)(2), 16 (a); *see also In re Jacoby*, 945 A.2d 1193, 1199-200 (D.C. 2008) (defining exception to reciprocal discipline rule when the sanction imposed in the foreign jurisdiction falls substantially outside the range of sanctions that would be imposed in the District for the same misconduct). Although Disciplinary Counsel proposes a five-year suspension with a fitness requirement (and we adopted this language in our July 2, 2015, show cause order), Ms. Peters makes a convincing case that this too is outside the range of sanctions that would be imposed under the circumstances and that the difference is substantial.

"The imposition of sanctions in bar discipline, as with criminal punishment, is not an exact science but may depend on the facts and circumstances of each particular proceeding." *In re Cleaver-Bascombe*, 986 A.2d 1191, 1202 (D.C. 2010) (citing *In re Goffe,* 641 A.2d 458, 463 (D.C. 1994)). In support of its request for a five-year suspension, Disciplinary Counsel cites *In re Omwenga*, 49 A.3d 1235 (D.C. 2012) (disbarring an attorney for intentional misappropriation of

a client's funds and continuing dishonesty), and *In re Cleaver-Bascombe*, 986 A.2d at 1200 (disbarring an attorney for attempting to fraudulently obtain public funds and continuing dishonesty), as involving roughly equivalent behavior. While these cases do involve a campaign of dishonesty, there are also many cases involving dishonesty—but not misappropriation—that do not warrant disbarment and have resulted in suspension of less than five years. *See, e.g.*, *In re Silva*, 29 A.3d 924 (D.C. 2011) (suspending attorney for three years with a fitness requirement for forging legal documents and continuing dishonesty); *In re Vohra*, 68 A.3d 766 (D.C. 2013) (suspending attorney for three years with a fitness requirement for forging client signatures and continuing dishonesty). We also take into consideration that Ms. Peters caused no actual harm through her misconduct and that her legal career has been otherwise free of disciplinary infractions. *See In re Washington*, 541 A.2d 1276, 1277 (D.C. 1988) (holding that, although "occurrence of actual harm is by no means a prerequisite for disciplinary action," the "absence of actual harm" and "respondent's long history of unblemished practice" were relevant to the court's choice of sanctions).

Although the misconduct in this case was serious, we conclude, in light of the absence of lasting harm and Ms. Peters's otherwise unblemished twenty eight-year career, that the relevant actions here are appropriately remedied by a three-year suspension. *See In re Silva*, 29 A.3d at 927-28; *In re Vohra*, 68 A.3d 771-73;

*see also* D.C. Bar R. XI, § 11 (e) (allowing imposition of "such discipline as [the court] deems appropriate" if the court finds that identical sanction is inapplicable).

### E. Misconduct in the District of Columbia

The SDNY Committee found that when Ms. Peters knowingly disobeyed the district court's confidentiality order and instructed a first-year associate to mark up documents, she engaged in conduct violating the following sections of the New York Lawyer's Code of Professional Responsibility: 1-102(A)(4) (engaging in conduct involving fraud, dishonesty, deceit or misrepresentation),1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 7-102(A)(5) (knowingly making a false statement of fact or law), and 7-106(A) (disregarding the ruling of a tribunal made in the course of a proceeding).[5] *See In re Peters*, 941 F. Supp. 2d at 362. This behavior constitutes misconduct in the District of Columbia. *See, e.g.*, Rules of Prof. Conduct 3.3 (requiring candor to a tribunal),

---

[5] In April 2009, the New York Rules of Professional Conduct replaced the New York Lawyer's Code of Professional Responsibility. Because of the timing of the misconduct, the Southern District of New York referred to the older rules. *See* Roy Simon, *Comparing New NY Rules of Professional Conduct to Existing NY Code of Professional Responsibility (Part II)*, New York Legal Ethics Reporter (Mar. 1, 2009), http://www.newyorklegalethics.com/comparing-new-ny-rules-of-professional-conduct-to-existing-ny-code-of-professional-responsibility-part-ii/; *In re Peters*, 941 F. Supp. 2d at 362.

3.4 (c) (requiring fulfillment of obligation to tribunal), 8.4 (c) (proscribing conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4 (d) (proscribing conduct that seriously interferes with the administration of justice).

## III. Concurrency of Sanction

Ms. Peters suggests that any disciplinary sanction be imposed upon her *nunc pro tunc*, as disciplinary authorities in other jurisdictions have found appropriate. "[A]n attorney sanctioned by the disciplinary authorities of another jurisdiction should ordinarily serve his or her reciprocal District of Columbia suspension concurrently with the suspension imposed in the original disciplining jurisdiction." *In re Soininen*, 853 A.2d 712, 728 (D.C. 2004) (quoting *In re Goldberg*, 460 A.2d 982, 985 (D.C. 1983)). However, "if the attorney unreasonably delays in notifying Disciplinary Counsel that he or she has been disciplined in another state, or if the attorney engages in the practice of law in the District of Columbia while suspended elsewhere, then a more severe sanction may be justified." *In re Goldberg*, 460 A.2d at 985.

Ms. Peters contends that she "kept the courts and bars where [she] actually practice[s]—the Connecticut Bar and the New York Bar—fully apprised and promptly notified at every juncture of this matter." Disciplinary Counsel in the District of Columbia was not notified, however, until April 10, 2015, seven years

after the interim suspension first issued in the Southern District of New York. Ms. Peters suggests that because other courts—more promptly notified—stayed their proceedings pending the outcome of the SDNY Committee's decision and subsequent appeals, and because she had not recently practiced in the District of Columbia, she did not need to notify Disciplinary Counsel until her petition for writ of certiorari was denied by the Supreme Court on November 3, 2014. Even under this interpretation, Ms. Peters's notification was delayed five months, and in any event, no reading of D.C. Bar R. XI, § 11 (b), the D.C. Bar rule governing notice, permitted Ms. Peters to forgo promptly notifying Disciplinary Counsel once she was "subjected to professional disciplinary action" in the Southern District of New York.[6]

Given Ms. Peters's unreasonable delay in providing notice of the disciplinary action against her, the ordinary presumption of concurrent sanctions is not warranted. Ms. Peters's suspension is to run from July 2, 2015, and not from April 10, 2008.

---

[6] Although Ms. Peters notes that she voluntarily refrained from practicing in the District of Columbia during the pendency of her disciplinary case before the Committee in the Southern District of New York, this fact does not—by itself— help her. *In re Goldberg*, 460 A.2d 982, 985 (D.C. 1983) (looking to both voluntary restraint and prompt notice to bar counsel of foreign discipline).

## IV.  Fitness Requirement

To require proof of fitness as a condition of reinstatement after suspension, "the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *In re De Maio*, 893 A.2d at 589 (quoting *In re Cater*, 887 A.2d 1, 6 (D.C. 2005)).  "[A]n attorney's lack of remorse, failure to cooperate during the disciplinary process, or other evidence of questionable conduct in the course of disciplinary proceedings" may tip the balance toward imposition of a fitness requirement.  *In re Guberman*, 978 A.2d 200, 211 (D.C. 2009).

While the misconduct in this case warrants a three-year rather than a five-year suspension, Ms. Peters's pattern of denying culpability causes sufficiently serious doubt about her continuing fitness to practice law as to warrant imposition of a fitness requirement should Ms. Peters decide she wishes to resume practice in the District of Columbia after the expiration of her suspension.

## V.  Conclusion

For the foregoing reasons, Kristan Peters is suspended from the practice of law in the District of Columbia for three years from July 2, 2015, with reinstatement conditioned upon proof of fitness to practice law.  *See* D.C. Bar R.

XI, §§ 3 (a)(2), 11 (e), 14 (h), 16 (a).

*So ordered.*